Jerry JACKSON, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Stanley LEMONS, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Larry Joe RIGGSBEE, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Supreme Court of Kentucky.

Feb. 16, 1984.

Rehearings Denied July 5, 1984.

Jack Emory Farley, Public Advocate, Frankfort, for appellant Lemons; Nan Shelby Calloway, Bowling Green, of counsel.

Jack Emory Farley, Public Advocate, William M. Radigan, Asst. Public Advocate, Frankfort, for appellants Jackson and Riggsbee.

Steven L. Beshear, Atty. Gen., Paul E. Reilender, Jr., David A. Smith, Asst. Attys. Gen., Frankfort, for appellee.

VANCE, Justice.

These appeals arise from the conviction of each of the appellants who were indicted separately but were tried jointly. As to appellant Jackson, an appeal is taken from his conviction on three counts of burglary, ten counts of theft by unlawful taking, and ten counts of knowingly receiving stolen property. He was sentenced to life imprisonment on each of the burglary charges, the three life sentences to run concurrently. He was also sentenced to imprisonment for ten years on each of the ten counts of theft by unlawful taking and the ten counts of knowingly receiving stolen property. These sentences were directed to run consecutively with each other and with the life sentences.

As to the appellant Riggsbee, an appeal is taken from Riggsbee's conviction on four counts of burglary, 13 counts of theft by unlawful taking, and 13 counts of knowingly receiving stolen property. He was sentenced as a persistent felony offender to life imprisonment on each of the burglary charges, the sentences to run concurrently. He was also sentenced to imprisonment for 20 years on each of the 13 counts of theft

by unlawful taking and the 13 counts of knowingly receiving stolen property. These sentences were ordered to run consecutively to each other and to the life sentences.

As to the appellant Lemons, the appeal is from his conviction on one count of theft by unlawful taking and one count of knowingly receiving stolen property. He was sentenced as a persistent felony offender to imprisonment for 20 years on each count.

All of the charges resulted from the investigation of a series of burglaries in Warren County, Kentucky, and neighboring counties. The appellants Jackson and Riggsbee sold a number of guns and other items stolen from several of the burglarized homes to an undercover police agent. Appellants Lemons and Riggsbee sold three items which had been stolen from one of the burglarized homes to the same agent.

The separate indictments were tried together in the trial court, and the three separate appeals were consolidated for oral argument in this court. Each of the appeals will be disposed of in this opinion. Because the issues raised are numerous and because some of the appellants raise issues different from the others, we will discuss each appeal separately.

## THE JACKSON APPEAL OF BURGLARY CONVICTIONS

Jackson has appealed his conviction of burglary in the first degree of the dwellings of William Sadler, Roger Stice, and Robert Moore. Each of these three individuals testified that their homes had been broken into, that a quantity of guns and other articles had been stolen and that no person had been given permission to enter their homes and take the articles which were stolen.

Some of the articles stolen from each home were sold by Jackson to a police undercover agent. This officer stated that Jackson told him the articles belonging to William Sadler were taken from a house "down the road" and that the articles taken

from Roger Stice and Robert Moore were "hot."

K.R.S. 511.020 provides that a person is guilty of burglary in the first degree when, with intent to commit a crime, he knowingly enters or unlawfully remains in a building, and when in effecting the entry or while in the building or in the immediate flight therefrom he, or another participant in the crime, is armed with explosives or a deadly weapon.

The appellant concedes the evidence is sufficient to show his knowledge that the merchandise disposed of by him was stolen, but he maintains that it was simply a flight of the imagination to infer from the evidence that he unlawfully entered a building or was armed with a deadly weapon.

■ One who steals a deadly weapon during the course of a burglary is armed within the meaning of K.R.S. 511.020. *Meadows v. Commonwealth*, Ky.App., 551 S.W.2d 253 (1977); *Daugherty v. Commonwealth*, Ky., 572 S.W.2d 861 (1978).

■ The possession of stolen property is prima facie evidence of guilt of theft of the property. *Wheeler v. Commonwealth*, 295 Ky. 28, 173 S.W.2d 817 (1943); *Martin v. Commonwealth*, Ky., 276 S.W.2d 19 (1955). Where there is a breaking and entering and property taken from a dwelling and the property is found in possession of the accused, such showing makes a submissible case for the jury on a charge of burglary. *Wahl v. Commonwealth*, Ky., 490 S.W.2d 769 (1972). Because the evidence is sufficient to support a conviction that appellant stole the property which was taken in a break-in, it follows that the evidence supports a jury finding that said appellant committed the burglary in which the property was stolen.

■ The appellant contends that the rule in Kentucky which allows possession of stolen property to create a prima facie case of guilt of the theft thereof has been declared unconstitutional by the United States Supreme Court in *In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368

(1970); *County Court of Ulster County, New York v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979); *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); and *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977).

These cases clearly hold that the state is required to prove every element of a criminal offense beyond a reasonable doubt and that the burden of proof cannot be shifted to an accused by a presumption which requires him to prove his innocence. It is a long leap from this thesis to the conclusion that the rule followed in Kentucky shifts the burden of proof to the accused.

*County Court of Ulster County New York v. Allen, supra; Mullaney v. Wilbur, supra;* and *Patterson v. New York, supra;* each were cases where an instruction of the court placed a burden of proof upon the accused. In this case there was no instruction to the jury which shifted any burden to the accused. The burden of proof rested with the Commonwealth throughout the trial. Historically, it has been the law in this state that it is not unreasonable for a juror to believe that one found in possession of stolen property is guilty of the theft. The jury is not instructed to find such a person guilty unless he proves that his possession is innocent and no burden of proof is ever placed upon the accused. Indeed, if possession of stolen property is the only proof of theft, the jury may well find the accused not guilty, but because human experience has shown such a strong connection between the possession of stolen property and the theft thereof, a jury is authorized upon a showing of possession to convict of theft. This is not such a shifting of the burden of proof as is condemned in the cases cited by Jackson.

## THE CHARGES OF THEFT BY UNLAWFUL TAKING

■ Jackson was convicted of ten counts of theft by unlawful taking. He contends that three of the thefts occurred in counties other than Warren County in which the case was tried, and therefore the trial in Warren County was improper. The venue of criminal prosecutions is the county or city in which the offense was committed. K.R.S. 452.510. Improper venue may be waived. RCr 8.26 provides that a defendant may move for a transfer of a prosecution to the proper venue if it appears that the offense was committed in a county other than that in which the prosecution is being conducted. K.R.S. 452.650 provides that the venue of a prosecution may be waived and that failure to make a timely motion to transfer the prosecution to the proper county shall be deemed a waiver of the prosecution. There was no motion here for a transfer of the prosecution to the county in which the theft occurred.

Jackson did move for a directed verdict on the ground that the offenses were not committed in Warren County. K.R.S. 452.-580 provides:

"Where a person obtains property by larceny, robbery, false pretenses, or embezzlement in one county and brings the property so obtained into or through any other county, he may be tried in the county in which he obtains the property or in any other county into or through which he brings it."

■ Because the stolen property was brought into Warren County by appellant, Warren County was a proper venue for the prosecution and the motion for directed verdict was properly overruled.

■ Although objection to venue is waived by failure to move for a transfer of the prosecution, when the instructions require the jury to find, as they did here, that the offense occurred in the county of prosecution, the Commonwealth cannot contend the jury was not bound by the instructions. *Chancellor v. Commonwealth*, Ky., 438 S.W.2d 783 (1969); *Hodges v. Commonwealth*, Ky.App., 614 S.W.2d 702 (1981).

The motion for directed verdict did not raise this issue because, as we have seen, the motion for directed verdict was properly overruled. The question of whether the evidence was sufficient could only be raised

as to this aspect of the case by an objection to the giving of an instruction which authorized the jury to find that the offense was committed in Warren County, Kentucky. *Kimbrough v. Commonwealth*, Ky., 550 S.W.2d 525 (1977). We do not find any such objection to the instruction and appellant, in his brief, does not point out such an objection.

 Jackson contends that one felony conviction of theft by unlawful taking of a radio scanner must be reversed because there was no proof of value of the scanner. This issue is not preserved for review by a motion for directed verdict on that ground. It appears, however, that appellant is entitled to have the conviction on this charge set aside on another ground, namely, that appellant was convicted of the theft of guns from the residence of Roger Stice under count 13 of the indictment, and the theft of the scanner from the Stice residence under count 25 of the indictment. The guns and the scanner were stolen from the same residence at the same time, and therefore constitute only one theft. *Nichols v. Commonwealth*, 78 Ky. 180 (1879); *Jacobs v. Commonwealth*, 260 Ky. 142, 84 S.W.2d 1 (1935). The question of double jeopardy was not raised in the trial court; nevertheless, it can be raised on appeal. *Sherley v. Commonwealth*, Ky., 558 S.W.2d 615 (1977).

The appellant further contends that the convictions for theft by unlawful taking must be reversed because there is no evidence that he stole the property. The conviction is based upon his possession of the stolen property and is sustainable upon the same grounds that the convictions for burglary were sustained at an earlier point in this opinion.

All of the convictions for theft by unlawful taking are affirmed except the conviction for theft of the scanner radio from Roger Stice. That conviction is reversed, and the sentence thereon vacated.

## THE CONVICTION FOR KNOWINGLY RECEIVING STOLEN PROPERTY

Jackson was convicted of ten counts of knowingly receiving stolen property. These convictions involved identically the same property for which he was convicted on ten counts of theft by unlawful taking. The question is whether two separate crimes were committed, or only one.

There is no question that a theft by unlawful taking occurred. The evidence was sufficient to sustain a finding that appellant took and exercised control over movable property of another with intent to deprive him thereof. K.R.S. 514.030(1)(a). The evidence was also sufficient to show that appellant received, retained, and disposed of movable property of another knowing it had been stolen without any intent to return it to the owner. K.R.S. 514.110(1).

In our view, the act of taking the property necessary to convict of theft, also constituted a receiving of the property; the exercise of control over the property under the theft statute is the same act as the act of retaining the property under the knowingly receiving statute. A conviction can be had under K.R.S. 514.110 upon proof of disposition of property known to be stolen, but in this case the accused's guilt under K.R.S. 514.110 was shown by his receipt of the property, and his retention of the property. These were the same acts which rendered him guilty under the theft statute.

K.R.S. 514.110 requires proof of knowledge that the property was stolen, but one who steals must also necessarily have knowledge that the property he steals is in fact stolen property.

K.R.S. 514.030 requires proof of intent to deprive the owner of his property while K.R.S. 514.110 requires proof that the property be knowingly received without an intent to return it to the owner. This is simply two ways of saying the same thing.

 We conclude that K.R.S. 514.110 does not require proof of any fact not required by K.R.S. 514.030, and while K.R.S. 514.030 does require proof of taking, the very act of taking is also a receiving of the property. Thus, although a person may be convicted of knowingly receiv-

ing stolen property on less proof than is necessary for a conviction for theft, a conviction for theft precludes a separate conviction for knowingly receiving the same property. *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

The Commonwealth contends that *Sutton v. Commonwealth*, Ky., 623 S.W.2d 879 (1981) holds that a prosecution may be maintained both for the theft of property and for knowingly receiving that property. In *Sutton* it was stated:

"Our conclusion is that one who steals property and is later found to be in possession of it may be convicted both of the theft itself (in the county in which it was committed) and the retention (in the county in which he is proved to have been in possession of the stolen goods)."

Prior to the enactment of K.R.S. 514.110 it was consistently held in this state that one who actually stole property could not be convicted of knowingly receiving it. K.R.S. 514.110 enlarged the scope of the offense to include not only receiving, but also retention and disposition. It is, of course, possible to retain stolen property in a different county from that in which it was stolen, and the only question presented by *Sutton, supra,* was whether a person who has committed a theft in one county can be prosecuted under K.R.S. 514.110 of the offense of knowingly receiving stolen property in another county in which he was found in possession of the property.

There was no attempt to prosecute in *Sutton* for both the theft and knowingly receiving the stolen property.

The above-quoted language from *Sutton* was unnecessary to the discussion of the case and is therefore dictum. We have concluded that it is erroneous and to the extent that *Sutton v. Commonwealth, supra,* indicates that a person may be prosecuted both for theft and knowingly receiving the same stolen article, it is overruled.

We must vacate the sentences imposed upon Jackson for knowingly receiving stolen property, not because the evidence does not sustain the conviction, but because the offenses charged were merged into the charges against appellant for theft by unlawful taking. If the convictions for theft by unlawful taking should later be reversed by further appeal, the judgment for knowingly receiving stolen property may be reinstated.

Jackson's contention that his aggregate consecutive sentences could not exceed the maximum sentence authorized for the highest class of crime for which any sentence was imposed was decided against him by *James v. Commonwealth*, Ky., 647 S.W.2d 794 (1983); *Devore v. Commonwealth*, Ky., 662 S.W.2d 829 (1984).

We find no merit in the remaining allegations of error.

Jackson's conviction for theft by unlawful taking of a radio scanner from Roger Stice is reversed, and all of the judgments of conviction of Jackson for knowingly receiving stolen property are vacated. In all other respects the judgment as to appellant Jackson is affirmed.

## THE RIGGSBEE APPEAL

Appellant Riggsbee participated with the appellant Jackson in the sale of the various items of property stolen from several homes. The evidence adduced against Jackson, for the most part, also incriminates Riggsbee. Riggsbee raises only one issue on appeal different from the issues raised by Jackson. That issue involves Riggsbee's conviction for the theft of a radio scanner from the home of Roger Stice. The radio scanner was recovered from Jackson's trailer, and Riggsbee contends there was no evidence to connect him with the theft.

There was evidence that the radio scanner was taken in the same burglary in which several guns were also stolen. Riggsbee and Jackson sold the guns to an undercover police agent. We have held this to be sufficient evidence to sustain a conviction for theft of the guns and also a conviction for burglary of the premises. Since the scanner was taken from the same premises and at the same time, the evi-

dence supports the conviction of Riggsbee for the theft of the scanner.

The appellant Riggsbee was convicted of the theft of other property from the home of Roger Stice taken at the same time the scanner was stolen. The different items stolen from the same place at the same time constitute only one theft as we held in our discussion of the Jackson appeal. Riggsbee's conviction for theft of the scanner must be vacated.

Likewise, his conviction of the theft of items from the home of Carl Lindsey as charged in count eight of the indictment must be vacated because he was convicted of the theft of other property from Carl Lindsey taken at the same time and place.

All of Riggsbee's convictions for knowingly receiving stolen property must be vacated for the reasons stated in the Jackson appeal. In all other respects the judgment as to appellant Riggsbee is affirmed.

## THE LEMONS APPEAL

Lemons was convicted of one count of theft by unlawful taking, one count of knowingly receiving stolen property, and one count of persistent felony offender in the first degree. The jury recommended a five year sentence on each charge which was enhanced to 20 years on each charge as a result of the persistent felony offender conviction. The two 20-year sentences were ordered to run consecutively. He was tried jointly with appellants Jackson and Riggsbee.

 The charges against Lemons involved the theft of three guns which were taken from the home of Carl Lindsey. Larry Riggsbee was indicted separately for the theft of the same three guns. Lemons was not accused of participating in the theft of any of the other numerous items of which Riggsbee was accused of stealing and was not accused of participating in the theft of any of the items of which Jackson was accused of stealing.

Appellant contends he should have been granted a separate trial from Jackson and Riggsbee. We agree.

The indictments did not charge a conspiracy. They related to a multitude of separate thefts by two of the defendants. Lemons was not shown to have the slightest connection with the other thefts. He was connected by the evidence with only one of the other defendants in one of the thefts.

The volumes of testimony and the veritable arsenal of weapons introduced to prove a ring of thefts by Jackson and Riggsbee with which appellant was not charged could not help but be prejudicial to appellant in his attempt to defend himself on the one charge against him. The prejudice here is much greater than that in *Hardin v. Commonwealth*, Ky., 437 S.W.2d 931 (1968), wherein we held that the trial of one charged as an habitual criminal with one charged with offenses of lesser magnitude is inherently prejudicial.

RCr 6.20 permits joinder of defendants for trial if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. It is not authority for joinder of the trial of two or more defendants who are charged with the commission of separate acts or transactions constituting separate offenses.

There was no error occasioned by the indictment before the holding of a preliminary hearing. On retrial the appellant Lemons cannot be convicted of both theft by unlawful taking and knowingly receiving stolen property where the charges relate to the same items of property.

Other errors alleged by appellant Lemons are unlikely to recur on retrial.

The judgment as to appellant Lemons is reversed for further proceedings in conformity with this opinion.

STEPHENS, C.J., and VANCE, GANT and STEPHENSON, JJ., concur.

LEIBSON, J., concurs by separate opinion in which AKER, J., joins.

WINTERSHEIMER, J., dissents by separate opinion.

LEIBSON, Justice, concurring.

For both Jackson and Riggsbee, the trial court ordered the sentences imposed for each of the counts of theft by unlawful taking and receiving stolen property served consecutively to each other and consecutively to the life sentences imposed for the burglaries. As a result, Jackson was sentenced to a total of life plus two hundred (200) years, and Riggsbee was sentenced to a total of life plus five hundred thirty-five (535) years.

We have reversed Jackson's convictions for theft and receiving stolen property as to the radio scanner and we have vacated the remaining convictions of Jackson and all convictions of Riggsbee for receiving stolen property. But this leaves the remaining convictions of Jackson and Riggsbee for thefts to be served consecutively to the life sentences imposed for the burglaries. The majority opinion fails to address appellants' claims that running these sentences consecutively to the life sentences violates KRS 532.110(1)(c). In my view these claims of error are well founded.

KRS 532.110(1)(c) provides:

"The aggregate of consecutive indeterminate terms shall not exceed in maximum length the longest extended term which would be authorized by KRS 532.080 for the highest class of crime for which any of the sentences is imposed."

Appellants have been convicted for Class B felonies. The highest class of crime for which appellants could be sentenced was a Class A felony. Under the provisions of the persistent felony statute the maximum term of imprisonment if a person stands convicted for a Class A felony is "no more than life imprisonment." KRS 532.-080(6)(a). Consequently, the aggregate permissible sentencing was limited to one life sentence for each appellant. As stated in the 1974 Commentary, KRS 532.110(1)(c) "places an upper limit on the maximum term of imprisonment that can be imposed through consecutive indeterminate terms...that is equivalent to the maximum term that can be imposed on a persistent felony offender under KRS 532.080."

In *Shannon v. Commonwealth,* Ky., 562 S.W.2d 301, 303 (1978), applying this statute where the accused had been sentenced to consecutive life terms on two murder charges, we held that "the sentence of life imprisonment for each of the two murders, with provisions that the sentences run consecutively, is not authorized."

The trial court decided that the provisions of KRS 532.110(1)(c) were overridden by KRS 533.060(2), which provides that the sentence for a new felony conviction that occurs while a defendant is on parole is to run consecutively "with any other sentence." KRS 533.060(2) is part of KRS Chapter 533, "Probation and Conditional Discharge." It expresses the intention of the legislature that sentences for new offenses committed while on parole shall not run concurrently with past offenses for which the defendant is on parole. The only reasonable interpretation is that the phrase "any other sentence" in KRS 533.060(2) means the unserved portion of the sentence for the felony for which probation or parole should be revoked.

It is inherently unreasonable to impose a sentence of imprisonment beyond life imprisonment. The only purpose for such a sentence would be the impact, if any, such a sentence might later have on the parole board in carrying out its function. A parole is an exercise of executive clemency. The present statutory scheme does not contemplate judicial direction or control of the parole function and we should not attempt to do indirectly what we are not authorized to do directly. Many of us hold the view that the parole system should be changed. But we must leave it to the legislature to make that decision.

I would direct the trial court to resentence Jackson and Riggsbee on the theft charges, ordering the sentences imposed on such charges to run concurrently with the sentences of life imprisonment previously imposed in each case for the burglaries.

AKER, J., joins in this concurring opinion.

WINTERSHEIMER, Justice, dissenting.

## I.

I must respectfully dissent from that part of the majority opinion which reverses the convictions of Jackson and Riggsbee.

As I previously noted in my dissent in *Fair v. Commonwealth*, Ky., 652 S.W.2d 864, at p. 868 (1983), the mere fact that a variety of property was taken at one time should not automatically provide a kind of judicially-approved volume discount for the thief. There is no reason for a criminal to limit his loot if he does not incur a greater penalty because of how much he steals. There is no real disincentive by means of punishment. The shrewd criminal will soon learn that the percentages are in his favor because the more you steal the relative chances of receiving a more serious penalty do not increase proportionately.

It is time to reexamine the basis for the decision in *Nichols v. Commonwealth*, 78 Ky. 180 (1879). Larceny is both an offense against the public and the individuals who suffer loss of their specific property. It is long overdue that this Court carefully reviews its entire legal philosophy about the ancient case defining the degree of punishment for the theft of 21 chickens and 7 geese more than 104 years ago.

Less than four years ago, this Court determined that separate convictions on separate counts for robbery of a hotel and robbery of the employees thereof was proper. *Douglas v. Commonwealth*, Ky., 586 S.W.2d 16 (1979). We should not continue the esoteric precedence of a century ago in a time when we have surely lost much of our innocence, and the crime of theft is a big and potentially profitable criminal business. I believe the decision in *Douglas, supra*, could be extended to the unlawful-taking provisions of the criminal code.

It appears that the legislature has attempted to address this problem by enacting KRS 514.030 and KRS 514.110. Although a prudent prosecutor should proceed with caution in using these statutes, I do not believe this marginal weapon should be removed from a prosecutor's arsenal

arbitrarily. There certainly may be cases where the two offenses presently denounced by these statutes could be used together. *Sutton v. Commonwealth*, Ky., 623 S.W.2d 879 (1981), indicates that theft and possession may result in two convictions. It does not necessarily mandate such a conclusion. The dicta which the majority complains of should be considered as guidance to prosecutors to carefully apply the laws to the facts in a given situation.

## II.

I must respectfully but strongly disagree with some of the views regarding sentencing expressed by Justice Leibson in his opinion concurring with the majority.

Obviously a sentence beyond life will never be served. However, it is also commonly known that criminal sentences of forty years or more are now subject to being reduced to eight years depending on good behavior in prison. *See* 501 KAR 1:010. The practical result is that a sentence of 535 years as originally imposed here could actually be satisfied in eight years. The criminal element knows this. Prosecutors and defense lawyers know it, so why do we persist in believing like Alice-in-Wonderland that judges and juries do not know it. One of the principal purposes of punishment is to deter criminal conduct. The widespread frustration of the public with the criminal justice system is largely centered on the weak and ineffective punishment of professional criminals who repeatedly commit major offenses.

I do not believe the impact of sentencing should be conceived of as affecting the independent decision of the parole board. Punishment must clearly apply to the criminal. I can agree that the parole system should be changed by the legislature. I believe the system should more clearly address the need for an effective reduction and control of crime in our society.

I do not believe the legislative intent of the statutes noted in the concurring opinion requires a softing or reduction of any pen-

alty properly provided. I cannot entirely quarrel with the analysis placed on the language of the statutes by Justice Leibson. However, I believe the General Assembly might wish to consider a clarification of the words in the cited statutes so as to more accurately reflect what I believe is their true intent.

The constraints of time prevent me from developing a more comprehensive and scholarly analysis of the legal philosophy which is the foundation of this entire question. Perhaps I will have the opportunity to speak to the matter in subsequent proceedings.