RENDERED: MAY 23, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0187-MR

THOMAS D. JACOBS                                        APPELLANT


|  | APPEAL FROM MARION CIRCUIT COURT |
|---|---|
| v. | HONORABLE SAMUEL TODD SPALDING, JUDGE |
|  | ACTION NO. 17-CR-00193 |


COMMONWEALTH OF KENTUCKY                        APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, CALDWELL, AND LAMBERT, JUDGES.

CALDWELL, JUDGE: Thomas D. Jacobs ("Jacobs") appeals from an order of the Marion Circuit Court denying his motion to vacate, set aside or correct his sentence pursuant to RCr[1] 11.42. Finding no abuse of discretion, we affirm.

---

[1] Kentucky Rules of Criminal Procedure.

# INTRODUCTION

Following a jury trial, Jacobs was convicted in the Marion Circuit Court of first-degree sexual abuse, victim under twelve years of age; four counts of first-degree unlawful transaction with a minor; two counts of second-degree rape; one count of first-degree sodomy, victim under twelve; one count of tampering with a witness; and being a first-degree persistent felony offender ("PFO"). He was sentenced to a total of thirty-five years' imprisonment. Jacobs' conviction and sentence were affirmed on direct appeal in an opinion and order by the Kentucky Supreme Court. *See Jacobs v. Commonwealth*, No. 2018-SC-000366-MR, 2020 WL 1847080, at *1 (Mar. 26, 2020) (unpublished).

Thereafter, Jacobs filed a *pro se* RCr 11.42 motion in the circuit court[2] on March 30, 2023. Pertinent to this appeal, Jacobs' *pro se* motion alleged that his defense counsel had provided ineffective representation at trial by failing to object to certain witness testimony. The circuit court appointed counsel to assist Jacobs on his motion and an evidentiary hearing occurred on January 31, 2024. The circuit court issued an opinion and order denying the motion on February 1, 2024.

---

[2] References to the "circuit court" refer to the Marion Circuit Court when it ruled on Moore's RCr 11.42 motion. References to the "trial court" refer to the Marion Circuit Court when presiding over Moore's jury trial.

**FACTUAL AND PROCEDURAL BACKGROUND**

The underlying facts of this case were set forth in detail by our Supreme Court in the opinion and order affirming Jacobs' conviction upon his direct appeal. *See Jacobs*, 2020 WL 1847080, at *1-5. The current appeal is focused upon the trial testimony of Jackie Moore ("Moore"). Our Supreme Court described Jacobs' relationship with Moore as follows:

> Thomas Jacobs and Jackie Moore were long-time friends. Moore claimed he practically raised Jacobs. Jacobs was also close to Moore's wife, Melissa Chesser, who saw Jacobs as a brother and best friend. Moore, Chesser, and their two daughters . . . moved into a house on Lake Avenue in 2010 . . . . Jacobs often slept in the residence, and sometimes nearby in his car or in the garage.
>
> Jacobs and Moore worked together doing whatever work they could find, including tearing down houses and barns . . . . (Moore and Chesser's oldest daughter) said that after the family moved into the Lake Avenue home, Jacobs began molesting her when she was eleven years old. The abuse continued for three years.

*Jacobs*, 2020 WL 1847080, at *1.

Moore testified during the Commonwealth's case-in-chief at Jacobs' jury trial. Early on in that testimony, the Commonwealth asked Moore if he had ever observed Jacobs behave toward his oldest daughter in a way that had alarmed him. Moore's response to this inquiry is central to Jacobs' present appeal. After answering in the affirmative, Moore testified:

-3-

> I walked in the kitchen, they was [*sic*] a little too close
> one day, and I told Tommy "what are you doing?" He
> said, "we're wrestling around, playing." I was just
> kidding with him and said, "you know she's a child."
> You know, like that. And, you know, me and him's [*sic*]
> both been to prison, and we make jokes, you know. And
> I said, "Ten and ten, Tommy. Remember – ten minutes
> to do it and ten years to get out of it." You know, just
> making jokes like that. He just laughed it off. I never
> thought nothing about it. You know, I loved him like I
> said, like a son.

Defense counsel made no contemporaneous objection to this testimony. Several minutes thereafter, the defense indicated to the court they were having difficulty understanding Moore's testimony and Moore was directed to speak directly into the microphone of the courtroom's audio system.

Later in the trial, Sergeant Henry Keene, the lead investigator into the sexual abuse charges against Jacobs, testified. Relevant to this appeal, the following occurred during this testimony:

> [W]hile describing his investigation, Sergeant Keene said
> that he was trying to locate Jacobs to see if Jacobs would
> give him access to other cell phones Jacobs possessed.
> When asked if he obtained the phones, Sergeant Keene
> said he did, when Jacobs got "locked up." Jacobs raised
> an immediate objection and moved for a mistrial. During
> discussions with counsel, the Commonwealth noted
> Jacobs had not objected when Moore talked about he and
> Jacobs both having been in prison in the past. Jacobs's
> counsel asserted she had not caught the earlier reference
> because she had a hard time hearing Moore.

*Jacobs*, 2020 WL 1847080, at \*10.

-4-

During the trial court's discussions with counsel upon defense's motion for a mistrial, the Commonwealth raised the issue of Moore's mention of Jacobs' having been in prison. In response, one of Jacobs' trial attorneys stated to the trial court:

> I had an extraordinarily difficult time understanding Mr. Moore but if that's what he said and that's what the Commonwealth says he said and that's what the Court says he said then I'm asking for a mistrial on that basis too. I couldn't hear it.

Before denying the motion(s) for a mistrial, in reference to Moore's earlier testimony, the trial court stated, "I don't even think the jury heard it to be honest with you . . . . And I don't think the jury even caught it, but I heard it and I'm just sitting here cringing whenever he's testifying."

Upon the jury's return, the trial court gave the following admonishment:

> Alright ladies and gentlemen, I need to give you an admonishment to you, and I need to make sure you listen very, very closely to this because it's important. Alright? There might have been an assertion at some point during the testimony that you've heard about the defendant possibly – about Mr. Jacobs – possibly having been in jail at some point. First of all, I don't know if he has been in jail – and that hasn't been proven. But, you need to understand whether or not he has been in jail means nothing to this case. That has absolutely nothing to do with the facts that you have to decide, and that is not to be considered by you in any way. And that testimony, whether true or not, whatever it might have been, is not evidence, and you are in no way to consider that

> whatsoever in your decision in this matter. And that's
> the admonishment to you.

*Jacobs*, 2020 WL 1847080, at \*11. Following his conviction, Jacobs appealed on issues including an allegation the trial court erred in denying his motion(s) for a mistrial. When his conviction and sentence were ultimately affirmed on direct appeal, our Supreme Court relied upon the trial court's admonition in reaching the conclusion that Sgt. Keene's reference to prior incarceration had been harmless error. *Id.* at \*12.

At the evidentiary hearing before the circuit court on Jacobs' post-conviction 11.42 motion, Jacobs' trial counsel, Hon. Shanda West-Stiles and Hon. Virginia Phelps, testified. Both West-Stiles and Phelps agreed that Moore had been mumbling and failing to enunciate during his testimony and this contributed to making his testimony especially difficult to decipher. Each testified they had either not heard or understood Moore's testimony that Jacobs had been in prison or the joke that followed. Had they heard or deciphered Moore testify that Jacobs had previously been in prison, both his trial attorneys agreed they would have objected and requested a mistrial.

The opinion and order of the circuit court denying Jacobs' RCr 11.42 motion concluded that he "was not prejudiced by the testimony of Mr. Moore and there is no reasonable probability that the result of the proceeding would have been

different if defense counsel had objected." The opinion and order further concluded that Jacobs had:

> failed to demonstrate that he was prejudiced by the testimony of Mr. Moore not objected to at trial concerning his prior incarceration to a degree warranting setting aside the convictions in the above-styled action. The Court further believes there is no reasonable probability the result of this proceeding would have been different had trial counsel objected to this testimony. This case essentially came down to the testimony of the Commonwealth's witnesses concerning the alleged sexual assault, and that of the Defendant. The jury obviously found the testimony of the Commonwealth's witnesses more credible, and returned the verdict and sentencing recommendation they deemed appropriate.

On appeal, Jacobs alleges the circuit court abused its discretion when it denied his RCr 11.42 motion. He argues the failure to object to Moore's joke permitted the jury to infer his prior incarceration was for offenses that were sexual in nature. Additionally, Jacobs argues, counsel's deficient performance weakened his arguments for a mistrial after Sgt. Keene's testimony as well as on direct appeal.

## STANDARD OF REVIEW

The denial of an RCr 11.42 motion is reviewed on appeal for an abuse of the trial court's discretion. *Bowling v. Commonwealth*, 981 S.W.2d 545, 548 (Ky. 1998). Abuse of discretion has been defined as being arbitrary, unreasonable,

unfair, or unsupported by sound legal principles. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted).

To succeed on a claim for ineffective assistance of counsel, one must meet the dual prongs of "performance" and "prejudice" provided in *Strickland v. Washington*, 466 U.S. 668, 697, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984), and by the Kentucky Supreme Court in *Gall v. Commonwealth*, 702 S.W.2d 37, 43 (Ky. 1985). To meet the first, a defendant must show that counsel's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2064. Judicial scrutiny "must be highly deferential." *Id*. at 689, 104 S. Ct. at 2065. Competent and effective assistance is reflected in differing choices, especially regarding strategic decisions informed by "reasonable investigations." *Id*. at 690-91, 104 S. Ct. at 2066.

In addition to establishing a deficient performance by counsel, a defendant must show prejudice, *i.e.*, "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694, 104 S. Ct. at 2068. In other words, not only must the litigant prove that counsel was ineffective, but that the ineffectiveness caused an outcome that would not have occurred but for the ineffectiveness.

Where an evidentiary hearing was held in an RCr 11.42 proceeding, we review a trial court's findings on the material issues of fact made pursuant to

RCr 11.42(6) under a clearly erroneous standard. CR[3] 52.01; *Ford v. Commonwealth*, 628 S.W.3d 147, 156 (Ky. 2021).

## ANALYSIS

I.      *The circuit court did not reach a conclusion as to the first prong under Strickland.*

A considerable portion of Jacobs' arguments on appeal focus upon the performance of counsel. The order of the circuit court did include mention that "it is unclear . . . how counsel could have been deficient for failing to object to a statement by a witness that neither heard." However, rather than resolving this, the circuit court elected to "work under the premise that counsel failed to timely object and that some members of the jury heard the testimony of Mr. Moore concerning the Defendant's previous incarceration." Upon this premise, the circuit court indicated it resolved the parties' arguments based upon analysis under "the second prong of *Strickland*, whether there is a reasonable probability the result of the proceeding would have been different and whether the Defendant was prejudiced." Accordingly, we find it unnecessary to address Jacobs' arguments concerning the performance of counsel under the first of the *Strickland* prongs.

---

[3] Kentucky Rules of Civil Procedure.

II. *Jacobs fails to establish a reasonable probability of a different result at trial or on direct appeal.*

Jacobs argues there was "unique prejudice that arose from Jackie Moore's testimony" that was noted by the Kentucky Supreme Court. In support of this, he points to the Supreme Court's statement that Sergeant Keene's testimony on incarceration "was less prejudicial than Moore saying he and Jacobs had both served time and Moore's joke about incarceration[.]" *Jacobs*, 2020 WL 1847080, at *11. Jacobs, in his brief, additionally argues examination of the Supreme Court's opinion establishes that the failure to object "weakened trial counsels' later objection to similar testimony and appellate counsel's arguments on direct appeal." He points to our Supreme Court's reliance on *Parker v. Commonwealth*, 291 S.W.3d 647, 658 (Ky. 2009), in the opinion and order affirming his conviction. *Jacobs*, 2020 WL 1847080, at *12 (citing *Parker*, 291 S.W.3d at 658). Both citations occurred in the following portion of that Court's analysis:

> Sergeant Keene's reference did not carry any details about what Jacobs had been locked up for including whether it was a felony, whether that resulted in a conviction, or any other damaging and highly prejudicial information. It was less prejudicial than Moore saying he and Jacobs had both served time and Moore's joke about incarceration when he said it took ten minutes to get in and ten years to get out. It is noteworthy that Moore's comments drew no objection.
>
> We have held that the admission of improper evidence is not enough to warrant a mistrial in a case where said evidence was first admitted without objection. In *Parker*

-10-

*v. Commonwealth*, 291 S.W.3d 647, 658 (Ky. 2009), this Court held that a comment regarding a witness's fear of retribution was admitted in error. However, the trial court in that case admonished the jury. After discussing the narrow exceptions to the presumption that admonitions are curative, we stated:

> But this case does not fall within those exceptions because the improper testimony was relatively brief in nature given the lengthy trial. And defense counsel did not object when Wright first mentioned fearing retribution and, in fact, raised that issue himself during cross-examination. Also, although not mentioned by the parties, the record reflects that at one point, [the witness] testified without objection that he did not want to "turn against" Parker because he feared for his safety. In short, we believe the trial court's admonition was a sufficient curative measure, rendering a mistrial unnecessary.

*Id.* (emphasis added).

Here, just as in Parker, a statement about Jacobs being "locked up" was not objected to the first time it was mentioned – only later, when Sergeant Keene brought it up during his testimony. Furthermore, when Jacobs testified, the jury learned from him that he was a convicted felon, used illegal controlled substances, and engaged in significant illegal drug consuming behavior around the Moore and Chesser home.

*Jacobs*, 2020 WL 1847080, at *11-12.

We discern no indication there would have been a different result on appeal had Jacobs' trial counsel objected contemporaneously. While Jacobs

-11-

emphasizes that the Supreme Court's citation to *Parker v. Commonwealth* would likely not have occurred under this alternate scenario, he cites to no law indicating this would have rendered the trial court's denial of his motion for a mistrial reversible error. "A trial court only declares a mistrial if a harmful event is of such magnitude that a litigant would be denied a fair and impartial trial and the prejudicial effect could be removed in no other way." *Matthews v. Commonwealth*, 163 S.W.3d 11, 17 (Ky. 2005), *as modified* (Aug. 25, 2005) (citing *Maxie v. Commonwealth*, 82 S.W.3d 860, 862 (Ky. 2002)). Furthermore, our Supreme Court has determined an isolated, non-responsive reference to prior crimes is insufficient to create a manifest necessity for a mistrial. *Matthews*, 163 S.W.3d at 18 (citing *Phillips v. Commonwealth*, 679 S.W.2d 235, 237 (Ky. 1984)).

In finding Jacobs was not prejudiced by the testimony of Moore and that there was no reasonable probability of a different result, the circuit court relied upon the admonition to the jury following Sgt. Keene's mention of prior incarceration. The circuit court noted the admonition "concerning any past incarceration" had been found "clear and unequivocal" by the Kentucky Supreme Court. *See Jacobs*, 2020 WL 1847080, at *12. The circuit court further stated its admonition was inclusive of and applicable to Moore's testimony in addition to that of Sgt. Keene. Based on our review of the videorecording of the motion for a

mistrial during Sgt. Keene's testimony, the trial court expressly indicated the admonition was intended to address the testimony of both witnesses.

Kentucky caselaw recognizes that an admonition to the jury will typically cure an unsolicited reference to prior criminal acts. *See Matthews*, 163 S.W.3d at 18 (citing *Graves v. Commonwealth*, 17 S.W.3d 858, 865 (Ky. 2000)). Indeed, "[t]his type of evidentiary error is easily cured by an admonition to the jury to disregard the testimony[,]" even where unambiguous references to prior criminal acts occur unsolicited during a witness's testimony. *Graves*, 17 S.W.3d at 865; *Huddleston v. Commonwealth*, 251 Ky. 172, 64 S.W.2d 450 (1933); *Clay v. Commonwealth*, 867 S.W.2d 200 (Ky. App. 1993).

Jacobs argues the trial court's admonition was inadequate because it did not address the "ten and ten" joke, which invited an inference by the jury that he had been to prison for sex crimes. In fact, in one of the more specific descriptions in Jacobs' appellate brief, he argues Moore's joke "insinuated that Mr. Jacobs had been to prison for prior serious crimes, *or even prior sex crimes*, in which he traded the short duration of the offense for the long sentence he received." (Emphasis added.) The Commonwealth argues it is purely speculation to surmise that the jury might have interpreted Moore's joke to "expressly or impliedly suggest Jacobs had been in prison for sex crimes." This Court agrees.

Jacobs never offers an explanation as to how the joke would lead the jury to believe Jacobs had been to prison for sex crimes.

"[U]nder *Strickland*, the burden of showing prejudice is on the defendant." *Commonwealth v. McKee*, 486 S.W.3d 861, 868 (Ky. 2016). Jacobs has offered no more than mere speculation about the effect Moore's joke might have had on the jury. "[S]uch speculation is insufficient to show prejudice." *Id.* One must show a reasonable probability that the error changed the result; it is not enough to speculate that the error might have had an effect on the outcome to establish the prejudice prong. *Id.*

III. *Jacobs' decision to testify at trial further undercuts his arguments of prejudice from Moore's testimony.*

Jacobs argues the circuit court abused its discretion in concluding that his decision to testify at trial negated any prejudice from Moore's testimony. Jacobs argues his admission to being a convicted felon at the outset of his testimony "eliminated any possibility of the Commonwealth delving into the nature of his convictions." In the opinion and order affirming Jacobs' conviction and sentence, our Supreme Court stated that, "when Jacobs testified, the jury learned from him that he was a convicted felon, used illegal controlled substances, and engaged in significant illegal drug consuming behavior around the Moore and Chesser home." *Jacobs*, 2020 WL 1847080, at *12. The circuit court's opinion and order now under appeal cited to this portion of the Supreme Court's opinion

-14-

and further found that "[i]t is reasonable to believe any jury would have believed the Defendant had been incarcerated at some point based on the testimony given by him at trial."

Upon our review of the video record of the testimony in his own defense before Jacobs left the stand, the jury was also made aware of his being charged with offenses that included falsely reporting an incident and giving a false name to a police officer. We find no abuse of discretion in the circuit court's determination that Jacobs' decision to testify served to nullify his arguments that he suffered prejudice from his counsel's failure to object to Moore's testimony.

It is worthy of mention that there exists considerable likelihood no member of the jury clearly understood the specific testimony of Moore at issue. At the evidentiary hearing before the circuit court, Jacobs' defense attorneys both testified that they themselves did not hear the testimony when it occurred, as both had indicated during the conference at trial on the motion(s) for a mistrial. While the circuit court issued its opinion "under the premise" that members of the jury heard and understood Moore, it also found Jacobs' argument "certainly begs the question about whether a jury could have heard the statements by Mr. Moore when defense counsel could not." During her testimony at the evidentiary hearing, Attorney Phelps conceded she was still unable to understand the joke portion of the testimony when a video and audio recording of that isolated statement was played

-15-

to her.  Only after being played the video for a second time, after being informed of the content of the testimony, was Phelps able to confirm what Moore had said during the "ten and ten" joke.  Accordingly, we detect no abuse of discretion in the circuit court's conclusion that Jacobs' ineffective assistance of counsel claim was not viable because he failed to demonstrate prejudice from Moore's testimony.

## CONCLUSION

In light of the foregoing, we affirm the order of the Marion Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Aaron P. Riggs
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Joseph A. Beckett
Assistant Attorney General
Frankfort, Kentucky